IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSEPH GREENE,
        Plaintiff,

vs.                                                    Case No.: 3:10cv472/RV/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
        Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to section 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

On December 28, 2006, Plaintiff filed applications for DIB and SSI, and in both applications he alleged disability beginning October 15, 2006 (Tr. 17).[1]  His applications were denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law

_____

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on March 3, 2011 (Doc. 14).  Moreover, the transcript page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

judge ("ALJ").  A hearing was held on January 16, 2009, and on February 26, 2009, the ALJ issued

a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through

the date of his decision (Tr. 17–28).  On September 15, 2010, the Appeals Council denied Plaintiff's

request for review (Tr. 1–3).  Thus, the decision of the ALJ stands as the final decision of the

Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d

1253, 1262 (11th Cir. 2007).  This appeal followed.

II.    FINDINGS OF THE ALJ

In his written decision the ALJ made several findings relative to the issues raised in this

appeal (*see* Tr. 17–28):

1)    Plaintiff meets the insured status requirements of the Act through December 31, 2010.

2)    Plaintiff has not engaged in substantial gainful activity since October 15, 2006, the date he alleges he became disabled.

3)    Plaintiff has one severe impairment:  degenerative disc disease ("DDD"), status post lumbar laminectomy.

4)    Plaintiff's impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5)    Based on Plaintiff's residual functional capacity ("RFC"),[2] he can perform his past relevant work as a retail sales clerk, manager/assistant manager, and convenience store clerk.

6)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not he has transferable job skills.

7)    Considering Plaintiff's age (thirty-one), high school education,  work experience, and RFC, there are jobs exiting in significant numbers in the national economy he can perform, even if he cannot perform his past relevant work.

8)    Plaintiff, therefore, has not been under a disability from October 15, 2006, through February 26, 2009.

---

[2] The ALJ essentially determined that Plaintiff has the RFC to perform light work.  This RFC determination will be discussed more fully *infra*, in the "Discussion" section of this Report.

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence.  42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

IV.     RELEVANT MEDICAL HISTORY[4]

    A.     Treatment Prior to the Date Plaintiff Alleges Disability

Plaintiff injured his back in approximately 1989 when he was thrown from the back of a pickup truck after the truck collided with a pole.  Over the next ten years, he was seen by multiple doctors and treated conservatively.  Plaintiff reinjured his back in 1999 picking up a television set. A January 2000 magnetic resonance imaging scan ("MRI") revealed a large central disc herniation at L4-5, with an extruded fragment, and a large left disc herniation at L5-S1.  Marcus P. Schmitz, M.D., assessed lumbar radiculopathy with disc herniations at two levels and recommended discectomies at L4-5 and L5-S1 (Tr. 429).  Dr. Schmitz performed the recommended surgery on November 8, 2000 (Tr. 420).  On January 22, 2001, Dr. Schmitz opined that Plaintiff could return to work in retail sales without restriction (*id.*).[5]

From approximately April 2001 through August 2004, Plaintiff received treatment for back pain at the "Complete Pain Management" clinic, primarily from Jeffrey Cox, M.D. (*see* Tr. 243, 244–85).  Over the course of Plaintiff's treatment Dr. Cox prescribed a variety of medications, including methadone, Dilaudid, Soma, and Oxycontin, and Plaintiff generally reported that the medications helped, "worked well," or were "effective" (*see, e.g.*, Tr. 244, 246, 247, 250, 251), although Plaintiff occasionally reported that they were ineffective, such as when he experienced "breakthrough" pain or needed adjustments to his medication regimen (*see, e.g.*, Tr. 248, 255).  Dr. Cox's treatment notes occasionally reflect his concern that Plaintiff was taking more medication than was prescribed and/or using illegal drugs (*see, e.g.*, Tr. 251 (Plaintiff counseled "at length" for using more medication than prescribed and warned he would be discharged as a patient if he continued to do so); Tr. 252 (Plaintiff ran out of medication two weeks sooner than he should have); Tr. 253, 285 (Plaintiff tested positive for cocaine); *see also* Tr. 365 (Plaintiff reported to another physician that his Oxycontin had been stolen)).

---

[4] If no reference to the transcript is made in this section of the Report, the information is derived from the ALJ's opinion (Tr. 19–20) or from Plaintiff's memorandum in support of his complaint (Doc. 18).

[5] Plaintiff returned to work and continued working until on or about October 15, 2006, the date he alleges he became disabled.

On July 31, 2004, Plaintiff presented to an emergency room ("ER") with complaints of headaches, nausea, fever, body ache, pain, and dizziness (Tr. 235).  He was discharged the following day with a primary diagnosis of "headache" and secondary diagnosis of marijuana abuse (Tr. 241). Plaintiff returned to the ER in October 2004 with complaints of pain in the lower lumbar area (Tr. 286).  Although Plaintiff requested an MRI, ER staff concluded that an "emergent" MRI was not necessary and advised Plaintiff to follow-up with his pain management physician (Tr. 286, 288).[6] Additionally, Plaintiff presented to an ER on February 3, 2005, with complaints of back pain (Tr. 297).  He was assessed with exacerbation of chronic back pain and released the same day (*id.*).

In or about March 2005, Plaintiff began treatment with Gary Gotthelf, M.D., who is board certified in, and practices, internal medicine (Tr. 395).[7]  Dr. Gotthelf ordered a lumbar MRI, which Plaintiff obtained on May 6, 2005 (Tr. 396, 367).  The MRI revealed an annular bulge, discogenic marrow reaction, and vertebral endplate spondylosis, but no evidence of uncorrected stenosis or recurrent disc herniation at L4-5 (Tr. 368).  In explaining the implications of these MRI results, Dr. Gotthelf testified that Plaintiff previously had a disc removed at L4-L5 and a disc retracted at L5-S1, which resulted in the higher vertebrae "being close to the lower vertebrae and pinching a nerve that goes into the leg" (Tr. 397).  He further explained, however, that based on the MRI results Plaintiff was not a candidate for additional surgery because he had no spinal stenosis or nerve root impingement (*id.*).  In July 2005, Plaintiff advised Dr. Gotthelf that his pain medications were "working well," and his quality of life had improved (Tr. 365).  Plaintiff was assessed with status post lumbar laminectomy and chronic pain (Tr. 364–65).  In December 2005, Plaintiff reported that his pain was better, although he was still "tender to touch" and experienced muscle spasm (Tr. 363). At that time Plaintiff was taking Oxycontin and Lortab (*id.*).  In March 2006, Dr. Gotthelf noted that

---

[6] Plaintiff advised ER staff that his pain management physician at that time was Dr. Sackheim, and he advised ER staff during a subsequent ER visit that he had been fired as a patient by Dr. Sackheim, but Dr. Sackheim's office has no record of Plaintiff as a patient (*see* Tr. 287, 294, 320–21).

[7] As will be discussed more fully *infra*, Dr. Gotthelf gave a sworn statement to Plaintiff's counsel regarding Plaintiff's treatment.  He testified that he began treating Plaintiff on March 23, 2005 (Tr. 395).  The earliest treatment record in the file from Dr. Gotthelf, however, is dated May 23, 2005 (*see* Tr. 359–68; 465–72).  Moreover, a radiology report dated May 6, 2005, states that Plaintiff was referred for a lumbar MRI by Dr. Gotthelf (Tr. 367).  Thus, the file is apparently missing the earliest of Dr. Gotthelf's records.

Plaintiff's radiculopathy was "markedly improved," although Plaintiff continued to complain of muscle spasm and intense back pain (*id.*).  Plaintiff also reported, however, that he could "keep a full-time job and be a part time father" on his medication regimen (*see id.*).  Additional treatment notes from March 2006, as well notes from April 2006, reflect Plaintiff's complaints of worsening symptoms (Tr. 362).

> B.      Treatment After October 15, 2006, the Date Plaintiff Alleges Disability

In December 2006, Dr. Gotthelf suggested to Plaintiff that he discontinue working in the "heavy automotive business" and train for other work (*see* Tr. 361).  Dr. Gotthelf also noted that Plaintiff's current dosage of Oxycontin (40 mg, every 8 hours) provided Plaintiff with a decent quality of life (Tr. 360).  In March 2007, Dr. Gotthelf stated that Plaintiff needed to see a pain management physician (*id.*).  On April 13, 2007, Plaintiff advised Dr. Gotthelf that he was applying for DIB (Tr. 359).  Plaintiff also stated that with medication he could exercise and walk at least three times a week, although he still experienced some paresthesias in his legs upon waking (*id.*).  An examination of Plaintiff's back revealed some paralumbar spasm, but reflexes, strength, and gait were normal (*id.*).  Dr. Gotthelf talked to Plaintiff "at length" about switching from Oxycontin to Lyrica "to improve his quality of life" without using narcotics, and he assessed failed back syndrome with chronic pain management (*see id.*).  On August 8, 2007, Plaintiff returned to Dr. Gotthelf and stated that he had been doing well until he slipped and fell on his knee (Tr. 471).  He reiterated that he was applying for DIB (*id.*).  He also stated he had used all of his prescribed Oxycontin, he wanted Dr. Gotthelf to prescribe a higher dosage, and he requested "a few days leniency on his prescriptions," noting that his medicine was delivered to his house on weekdays only and not on Saturdays or Sundays (*id.*).  Dr. Gotthelf again recommended the use of Lyrica instead of Oxycontin and noted that Plaintiff was "amenable to this" (*id.*).  Thus, Lyrica was added to Plaintiff's medication regimen, and Dr. Gotthelf did not increase the Oxycontin (*see id.*).

It appears that Plaintiff saw Dr. Gotthelf five additional times, on November 14, 2007, January 25, 2008, February 11, 2008, May 21, 2008, and October 22, 2008 (*see* Tr. 469–70).  The records from the first four visits reflect treatment primarily for prostatitis and related conditions, and

they contain no diagnosis or "assessment" related to Plaintiff's back.[8]  At the October 2008 visit, Plaintiff reported "getting by" on a reduced dosage of Oxycontin in combination with Lyrica (Tr. 469).  Plaintiff stated he was "still able to do his activities of daily living, [and] in fact, yesterday he walked around the block for approximately 20 minutes" (*id.*).  Dr. Gotthelf commented that although Plaintiff experienced some left groin pain at the end of his walk, he was "at least" more mobile  (*id.*).  Dr. Gotthelf assessed failed back syndrome and advised Plaintiff to return in three to four months, at which time Dr. Gotthelf planned to increase Plaintiff's non-narcotic pain medications (*id.*).

Dr. Gotthelf provided a sworn statement to Plaintiff's counsel on January 9, 2008 (Tr. 391–408).  Counsel has summarized the statement as follows:

> Dr. Gotthelf indicated that Mr. Greene's diagnoses were failed back syndrome, chronic depression, and chronic pain.  He stated that his symptoms involved severe pain and burning in the low back with occasional radiation into the legs.  He stated that his objective findings included muscle spasms and decreased range of motion. Dr. Gotthelf stated that Mr. Greene's most recent MRI showed that there was a retraction of the disc at L5-S1, which resulted in one of the vertebrae being close to the lower one, and pinching the nerve.  Dr. Gotthelf stated that he did not believe that Mr. Greene was a surgical candidate at that time because there was no stenosis and the nerve roots were not being impinged on by disc material.

> In discussing the level of pain that Dr. Gotthelf believed that Mr. Greene experienced, he stated that he believed his pain was irretractable, and that activities such as walking and standing would greatly increase the pain Mr. Greene experienced to such a degree as to be a serious distraction from job tasks or to cause total abandonment of job tasks.  Dr. Gotthelf further stated that Mr. Greene's subjective complaints were consistent with his objective findings.

> Dr. Gotthelf also talked about the treatment which was being provided [to] Mr. Greene at the time of his statement, which included, taking Lyrica in order to decrease his nerve pain, Xanax (3) times a day for his nerves, Celexa for his depression, Oxycontin 40 mg three (3) times a day, as well as short acting Oxycontin 5mg four (4) times a day as needed for break through pain.

---

[8] On November 14, 2007, Plaintiff complained of erectile dysfunction and sleepiness, either or both of which Plaintiff thought might be a side effect of the Lyrica (Tr. 470).  In January 2008, Plaintiff reported problems with urination; his prostate was checked, and he was advised to return for a follow-up check in two weeks, which Plaintiff did on February 11, 2008 (Tr. 469–70).  The May 2008 treatment notes states only that Plaintiff appeared for an office visit and "routine checkup" (Tr. 469).

With respect to side effects from his medications, Dr. Gotthelf felt that Mr. Greene was likely markedly impaired from the perspective of being able to drive a vehicle, and that the side effects of the medications could be expected to be severe and limit his effectiveness due to distraction, inattention, or drowsiness.

With respect to Mr. Greene's physical capacities, Dr. Gotthelf felt Mr. Greene could probably walk for fifteen minutes at a time, could stand for fifteen minutes at a time, and sit for an hour or two. He stated that exceeding these times would likely increase the spasms and pain in his back. Dr. Gotthelf also indicated that he believed Mr. Greene would have to take as many as four unscheduled breaks during a workday in order to alleviate his pain and symptoms. Dr. Gotthelf also testified he believed Mr. Greene would likely miss in excess of three days a month from work as a result of his severe back pain.

(Doc. 18 at 5–6) (references to transcript (i.e., Tr. 391–408 (Dr. Gotthelf's statement)) omitted).

C.      Evidence from Examining Agency Physicians

On March 6, 2007, Plaintiff was examined by Richard Lucey, M.D., a board certified family practitioner (Tr. 336). On examination, Dr. Lucey observed a well-healed surgical scar, normal gait, and no evidence of weakness or ataxia, although Plaintiff transferred a "little slowly" from standing to lying, and he displayed a "somewhat diminished range of motion" in the thoracolumbar spine—greatest in forward flexion—due to subjective complaints of discomfort (Tr. 337). Plaintiff's examination was otherwise essentially normal (e.g., full grip strength, full range of motion in the upper and lower extremities, normal deep tendon reflexes, negative straight leg raising tests to full extension sitting and to 75 degrees supine) (id.). Dr. Lucey assessed underlying DDD of the lumbar spine, status post lumbar laminectomy, chronic low back pain (associated with first two diagnoses), and history of reactive depression (id.).

On April 10, 2008, Plaintiff was examined by Leo Chen, M.D., a board certified orthopedic surgeon (Tr. 409). Plaintiff displayed full range of motion in all areas tested, including the cervical spine and knees, with one exception: he displayed some limitations in the lumbar spine, greatest with forward flexion (Tr. 410–13). Additionally, Plaintiff was able to toe, heel, and tandem walk, although he did so very slowly and unsteadily, and he displayed no gross weakness and no joint discoloration, deformity, abnormality, inflammation, or effusion (Tr. 410). All reflexes, including deep tendon reflexes, were symmetric, and his toes were "downgoing" (id.). Dr. Chen described

Plaintiff as "grossly neurovascularly intact" but noted that Plaintiff had some "subjective numbness and tingling down both legs, along with associated pain" (*id.*).  Dr. Chen also reviewed x-rays of Plaintiff's thoracic and lumbar spine.  The thoracic x-ray revealed no abnormalities (Tr. 409).  The lumbar x-ray revealed no acute bony injury but some disc space narrowing and early spurring at L4-L5 and L5-S1, as well as a loss of normal lordosis (*id.*).   Dr. Chen assessed lumbar spondylosis/DDD status post lumbar laminectomy and chronic low back pain (Tr. 410).  He also completed a Medical Source Statement ("MSS"), on which he opined that Plaintiff can frequently lift or carry up to ten pounds and occasionally lift or carry up to twenty pounds; sit one hour at one time but up to five hours in an eight-hour workday; stand thirty minutes at one time but up to two hours in an eight-hour workday; and walk thirty minutes at one time but up to one hour in an eight-hour workday (Tr. 414–15).  Additionally, Dr. Chen opined that Plaintiff has no restrictions relating to the use of his hands or feet (e.g., reaching pushing, pulling, operating foot controls) and is not completely precluded from postural activities such as climbing, stooping, kneeling or crawling, although he has some "occasional" or "frequent" limitations with regard to such activities (Tr. 416–17).

> D.   Evidence from Non-Examining Agency Consultants[9]

Michael Luttrell completed a Physical RFC Assessment on March 13, 2007 (Tr. 342–49). He opined that Plaintiff is able to frequently lift or carry ten pounds and occasionally lift or carry twenty pounds; stand, sit, or walk six hours in an eight-hour workday; and push or pull without limit (Tr. 343).  Additionally, Plaintiff is able to occasionally climb, stoop, kneel, and crouch, and he has no manipulative, visual, communicative, or environmental limitations (Tr. 344–46).

John Dawson completed a Physical RFC Assessment on May 23, 2007 (Tr. 369–76).  He opined that Plaintiff can occasionally lift or carry twenty-five pounds and frequently lift or carry fifty pounds; frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds (Tr. 370–71).  Otherwise, his opinions are the same as those of Michael Luttrell.

---

[9] The credentials of the non-examining agency consultants are not apparent from the record.

V.     DISCUSSION

In this appeal, in essence, Plaintiff asserts error regarding the ALJ's RFC determination and corresponding finding at step four, his discounting Dr. Gotthelf's opinions, his evaluation of Plaintiff's credibility, and his development—or lack thereof—of the record (*see* Doc. 18 at 2–3), which assertions, for its convenience, the court organizes and considers in the following manner.

A.     Plaintiff's Credibility and the ALJ's RFC and Step Four Determinations

Plaintiff testified at his hearing before the ALJ that he is quite limited due to back pain, and he often has to rest or lie on a heating pad during the day (*see* Doc. 18 at 20).  The vocational expert ("VE") testified that if Plaintiff's testimony was fully credited, his limitations would place him at an exertional level that is "less than sedentary," and he would be unable to work (*see* Tr. 57–58).  The ALJ discounted those complaints of Plaintiff that, if accepted as true, would render him incapable of performing any work, and Plaintiff contends the ALJ erred in this regard.  More specifically, Plaintiff appears to contend that the ALJ erred by relying solely on his daily activities in discrediting his complaints and by failing to include "pain" in the RFC determination.  Plaintiff also states that the ALJ's finding at step four is inconsistent with the RFC determination.

Credibility

"The Secretary must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain."  Foote, 67 F.3d at 1560.  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Id.* at 1561.  Failure to cite or refer to the language of the three-part pain test is not reversible error, however, where the ALJ cites to 20 C.F.R. § 404.1529, "which contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard."  *See* Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).  It is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible.  *See* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  "But the ALJ's discretionary power to

determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony."  *Id.*

Here, the ALJ specifically referenced section 404.1529 and articulated the correct pain standard (Tr. 23).  He then concluded that Plaintiff's back condition could reasonably be expected to cause some pain and other symptoms but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [following] residual functional capacity assessment" (*id.*).  Plaintiff has the RFC to perform light work,[10] with the following specifications: he can stand or walk thirty minutes at a time for a combined hour; sit thirty minutes at a time; sit five hours in an eight-hour day; stand two hours in an eight-hour day; walk one hour in an eight-hour day; and lift or carry ten pounds frequently and twenty pounds occasionally (*id.*).[11]

In discounting the most extreme of Plaintiff's complaints (i.e., those that conflict with the RFC), the ALJ first pointed to Plaintiff's own testimony and reports regarding his abilities and daily activities.  More specifically, the ALJ noted as follows:

> The claimant testified that he can walk 1/3 of a mile [Tr. 50] and sit for four hours of an eight hour day but also that he can walk for four hours of an eight hour day. The claimant testified that he is able to exercise, walk around the neighborhood, vacuum, take out the garbage, and wash dishes [Tr. 47; *see also* Tr. 165, 469].  He also indicates that he does not cook but did not do so before his car accident. However, he has also stated that he does prepare his lunch in Exhibit 5E [Tr. 168]. He states that he can help with house cleaning and does his own laundry.  He can also perform his own personal care.  He indicates in Exhibit 6E that driving is not a

---

[10] Light work is defined in the Regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R § 404.1567(b).

[11] The RFC is consistent with the opinions of Dr. Chen, as contained on the MSS he completed in April 2008.

problem [Tr. 175], but testified that he does not drive.  Also, his mother indicated in Exhibit 3E that the claimant "can drive okay" [Tr. 164].  The claimant also takes care of his children when he has visitation every other weekend [Tr. 167].  He indicates that he cannot do yard work due to his back impairment but that he can sweep and that he can lift his thirty five pound daughter with some pain if he has to do so.  He also indicates that he had no problem caring for his children and reports that he can do some shopping for his mother [*see also* Tr. 33, 46 (Defendant testified that he is able to drive, that he walks around the neighborhood, and that he tries to exercise); Tr. 166 (Defendant stated he runs errands, such as going to a doctor's office or refilling prescriptions); Tr. 175 (Defendant stated he cares for his children, aged 4 and 11, with "no problem")].

(Tr. 24–25).  The ALJ concluded, based on the foregoing, that "[o]verall the claimant's activities of daily living fail to support the extent of his allegations" (Tr. 24).  The ALJ's conclusion is supported by the record, and the ALJ properly considered Plaintiff's daily activities in evaluating his credibility.  *See* Moore v. Barnhart, 405 F.3d 1208, 1212–13 (11th Cir. 2005) ("the ALJ [properly] questioned Moore's contentions that she could not . . . perform light work, in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework"); *see also*  Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (if daily activities are to be considered, the ALJ must do so in the context of all of the evidence in the record).

Next, the ALJ considered Plaintiff's lack of substantial medical treatment during the relevant time frame (Tr. 24).  As can be seen from a review of section IV. B of this Report, *supra*, and as the ALJ noted, the only treatment Plaintiff received after the date he alleges disability was from Dr. Gotthelf (*id.*).  As the ALJ also noted, Dr. Gotthelf treated Plaintiff conservatively with medication; he did not recommend or perform any additional surgeries, administer or recommend epidural injections, or prescribe or recommend any other form of more invasive treatment (*id.*).[12]  Similarly, the ALJ noted, Plaintiff did not seek treatment from a specialist after the date he alleges disability; nor did he receive treatment at an ER, seek second opinions, or seek any form of alternative treatment (*id.*).  The ALJ also pointed out, correctly, that Dr. Gotthelf's treatment notes reflect that Plaintiff generally "g[ot] along pretty well" on the medication regimen established by Dr. Gotthelf

---

[12] In March 2007, Dr. Gotthelf recommended that Plaintiff see a pain management physician, but—as the ALJ noted—Plaintiff did not follow the recommendation (Tr. 20).

(*id.*; *see also* Tr. 42–43, 174, 357 (documenting the overall efficacy of Plaintiff's medications)). *See* Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.") (citation omitted). Moreover, the ALJ observed, after reporting an increase in pain after falling on his knee in August 2007, Plaintiff saw Dr. Gotthelf on a less frequent basis, most often for problems unrelated to his back (Tr. 24). The ALJ properly considered Plaintiff's limited treatment history in weighing his credibility. *See* Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (ALJ may consider treatment that is "entirely conservative in nature" in discrediting a claimant's testimony); Miller v. Astrue, Case No. 8:07cv2074, 2009 WL 3516, at *5 (M.D. Fla. January 6, 2009) (same); Woodum v. Astrue, Case No. 8:07cv404, 2008 WL 759310, at *3 (M.D. Fla. March 20, 2008) (ALJ properly considered that "limited and conservative treatment . . . is inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant"). Furthermore, the ALJ's findings regarding Plaintiff's treatment are fully supported by the record.

Continuing, the ALJ pointed to Plaintiff's physical examinations by Dr. Lucey and Dr. Chen, both of which revealed that Plaintiff—objectively—was limited only with regard to forward flexion (Tr. 24). The ALJ also pointed to Dr. Chen's opinions on the MSS (which form the basis for Plaintiff's RFC) as evidence inconsistent with Plaintiff's allegations of disabling limitations (*id.*).

Thus, contrary to Plaintiff's contention, the ALJ did not rely solely on Plaintiff's daily activities in discrediting his complaints of disabling limitations (*see* Tr. 24–25). Additionally, because the ALJ articulated the various inconsistencies on which he relied in discrediting Plaintiff's subjective complaints, and because the ALJ's findings are supported by substantial evidence on the record as a whole, the credibility finding should be affirmed. *See* Foote, 67 F.3d at 1561–62 (a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court).

Failure to Include "Pain" in the RFC Determination

Plaintiff contends the ALJ erred by failing to specifically include "pain" in his RFC.  For the reasons that follow, however, Plaintiff's contention fails.  The RFC assessment is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step five to determine if the individual is able to do other work, considering his age, education, and work experience.  Social Security Ruling ("SSR") 96-8p (eff. July 2, 1996), 1996 WL 374184, at *2.  The RFC finding is the administrative assessment of the extent to which a claimant's medically determinable impairments, including any related symptoms such as pain, may cause physical or mental limitations or restrictions that may affect his capacity to work.  *Id.*; *see also* 20 C.F.R. § 404.1545.  It is expressed in terms of work-related underlined functions (*see id.*; *see also* 20 C.F.R. § 404.1529(a)) and therefore need not include the specific impairments that give rise to it.  The RFC assessment is also based on all the relevant evidence in the record, including the location, duration, frequency, and intensity of a claimant's pain; the precipitating and aggravating factors that give rise to his pain; the dosage, effectiveness, and side effects of his medication; and the treatment and any measures other than medication he has used to relieve his pain.  *Id.*  Thus, the fact that the ALJ's RFC finding does not include the word "pain" does not show that the ALJ failed to consider Plaintiff's pain.  Moreover, the ALJ specifically stated he considered all of Plaintiff's symptoms, including the subjective complaints of pain he found credible, in formulating Plaintiff's RFC (*see* Tr. 23).  Plaintiff is therefore not entitled to relief on this claim.

### Step Four Determination

The ALJ determined at step four that Plaintiff can perform his past relevant work as a retail sales clerk, manager/assistant manager, and convenience store clerk, since this work does not require the performance of work-related activities precluded by his RFC (Tr. 25).  The ALJ determined, alternatively, at step five that Plaintiff can perform other available work (Tr. 26).

Plaintiff contends the ALJ erred at step four in concluding he could return to his past relevant work as a retail sales clerk or convenience store clerk because the VE testified that a hypothetical person with the limitations set forth in Plaintiff's RFC could not perform those jobs (Doc. 18 at 9–12).  In support, Plaintiff references the VE's testimony in response to questioning by the ALJ and follow-up questioning by Plaintiff's counsel.  He notes that the VE's former testimony appears to support the ALJ's conclusions as to Plaintiff's ability to perform his past relevant work, but he

asserts that the VE's latter testimony establishes that a person who can stand for only two hours in an eight-hour workday is unable to perform light work, which is the type of work Plaintiff previously performed (*see id.*).  Plaintiff is correct.  The VE specifically testified that "standing and walking must equal six hours in an eight hour day to constitute light work" (Tr. 54).  Moreover, the VE characterized Plaintiff's past relevant work as "light" (Tr. 52), and Plaintiff described this work as requiring seven hours of standing each day (*see* Tr. 36–37, 52, 189, 192).  Thus, the ALJ's finding at step four conflicts with his RFC determination and is unsupported by the record, as the Commissioner concedes (Doc. 21 at 10–11).

The question thus becomes whether the ALJ's error at step four is harmless, because: (1) Plaintiff can perform sedentary work (*see* 20 C.F.R § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.")); and/or (2) the ALJ's alternative finding at step five is supported by the record.

As to the first part of the question, Plaintiff's counsel specifically asked the VE whether a person with the limitations set forth by Dr. Chen (which are the same as those incorporated into the RFC) could perform sedentary work (Tr. 54–55).  The VE responded as follows:

> Well, you know, that's tough.  It's not really a full range of anything, you know, however from a vocational perspective, I think it's one of these cases that falls between the levels and there's certainly are [sic] jobs that, in my opinion, meet within those limitations.  I certainly would not say an individual could not work with those limitations, but on the other hand I can't say it falls within a range of anything I mean it's one of those ambiguous combinations of restrictions.

(Tr. 55).  The undersigned cannot conclude based on this ambiguous testimony of the VE that Plaintiff can perform a full range of sedentary work.

As to the second part of the question, Plaintiff contends the ALJ's alternative finding at step five is unsupported by the record because the ALJ failed to consider Plaintiff's pain, a non-exertional limitation (*see* Doc. 18 at 12–15).[13]  At step five of the sequential evaluation, the Commissioner has the burden of proving "there is other work in the national economy that the

---

[13] Although the undersigned has concluded that the ALJ did <u>not</u> fail to consider Plaintiff's pain, Plaintiff appears to raise a somewhat different argument here that is related to the ALJ's finding at step five.

claimant can perform."  Wolfe, 86 F.3d at 1077.  "If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled." Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).  To determine whether a claimant has the ability to adjust to other work, an ALJ can utilize a VE, and the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy.  *Id.* at 1240.  The hypothetical questions must include "all of the claimant's impairments." Wilson, 284 F.3d at 1227.  Stated another way, a hypothetical question must comprehensively describe the claimant's condition, and VE testimony that does not accurately address that condition cannot be considered substantial record evidence.  Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).  However, the ALJ is not required to include findings in the hypothetical that he has properly rejected as unsupported.  *See* McSwain v. Bowen, 814 F.2d 617, 620 n.2 (11th Cir. 1987).  Nor is an ALJ required to include in the hypothetical "each and every symptom" alleged by a claimant.  Ingram, 496 F.3d at 1270; *see also* SSR 96-8P ("RFC assessment considers only <u>functional</u> limitations and restrictions . . . including the impact of any related symptoms," such as pain, which is "not intrinsically exertional or nonexertional"—"It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional.").

Here, the VE was asked whether a person with Plaintiff's RFC—which, for reasons previously discussed, need not specifically include "pain"—could perform work other than his past relevant work (Tr. 55).  The VE testified that such a person could perform other work available in the regional and national economies, and she noted that the work would generally be work that accommodates a need for a sit/stand option (*id.*).  The VE then identified several such types of work, including storage facility rental clerk (light, unskilled), ticket taker (light, unskilled), and check casher (sedentary, semi-skilled) (Tr. 55–56; *see also* Tr. 26–27).  Therefore, the ALJ's finding that

Plaintiff is not disabled at step five of the sequential evaluation process is supported by substantial evidence and, correspondingly, the ALJ's error at step four is harmless.[14]

C.       The Opinions of Dr. Gotthelf

Dr. Gotthelf provided a sworn statement to Plaintiff's counsel during which he offered several opinions that, if accepted as true, would render Plaintiff disabled.  The ALJ discounted these opinions, and Plaintiff claims he erred in doing so.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis, 125 F.3d at 1439–41; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991);  Sabo v. Chater,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240–41 (citation omitted).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). However, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R.

---

[14] Plaintiff asserts that the ALJ's step-five finding is not supported by substantial evidence because he cannot perform the job of check casher, as he has no skills transferable to semi-skilled work (*see* Doc. 18 at 12 n.1). Assuming Plaintiff's assertion is correct, it has no effect on the ALJ's step-five finding because the two other jobs identified by the VE (storage facility rental clerk and ticket taker) exist in significant numbers in the local and national economies, exclusive of the number of available check casher jobs (Tr. 55–56).

§ 404.1527(d).  Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion.  *See* <u>Wilson v. Heckler</u>, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

Here, in discussing the opinions of Dr. Gotthelf, the ALJ acknowledged his status as a treating physician but nevertheless assigned little weight to his opinions (Tr. 25).  As justification, the ALJ noted that Dr. Gotthelf's opinions are inconsistent with his conservative course of treatment and somewhat sporadic course of Plaintiff's treatment after August 2007 (as discussed, *supra*, in relation to Plaintiff's claim that the ALJ erred in weighing his credibility) (*id.*).  The ALJ also noted that Dr. Gotthelf's opinions are inconsistent with his treatment notes (*id.*).  For example, the ALJ noted that the treatment notes contain no indication that Plaintiff's pain was as intense as he later described it in his sworn statement to Plaintiff's counsel (e.g., "irrectractable," causing "serious distraction") (*id.*).  Similarly, Dr. Gotthelf's notes contain no indication that Plaintiff suffered from disabling side-effects from his medications and no indication that Plaintiff reported the type of side effects later described by Dr. Gotthelf (e.g., side effects causing marked impairment and affecting Plaintiff's ability to drive or be effective due to distraction, inattention, or drowsiness).  To the contrary, Dr. Gotthelf's treatment notes reflect that Plaintiff's pain medications worked well and provided Plaintiff with a decent quality of life.  Moreover, the record establishes that Plaintiff worked in retail sales and as a tow truck driver during the time he was treated by Dr. Cox and prescribed the same or similar pain medications (*see, e.g.*, Tr. 189, 251).  Thus, Plaintiff's pain medication obviously did not interfere with his ability to work.  In fact, Plaintiff specifically reported to a physician's assistant at the Complete Pain Management clinic that he had no side

effects from his medications, which included Dilaudid, Soma, and Oxycontin (*see* Tr. 285).

Although such medications may cause disabling limitations for  some individuals, the record does

not support a finding (or Dr. Gotthelf's testimony) that the medications cause such limitations for

Plaintiff.  Likewise, nothing in Dr. Gotthelf's treatment notes supports his later testimony that

Plaintiff was limited to walking or standing for only fifteen minutes, that he would need four

unscheduled breaks in a workday, or that he would miss more than three days of work each month.

Indeed, Dr. Gotthelf's treatment notes contain no indication that Plaintiff was limited or otherwise

restricted from employment, other than a suggestion that Plaintiff discontinue working in the heavy

automotive business and train for a lighter form of work (which is essentially what the ALJ

ultimately concluded in finding Plaintiff "not disabled").  *See* Singleton v. Astrue, 542 F. Supp. 2d

367, 378–79 (D. Del. 2008) (in evaluating a plaintiff's credibility, ALJ did not err in considering,

among other factors, that "none of [p]laintiff's treating physicians identified any specific functional

limitations arising from her fibromyalgia or other conditions that would render her totally

disabled"); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown v. Chater, 87 F.3d

963, 964–65 (8th Cir. 1996) (lack of significant restrictions imposed by treating physicians

supported the ALJ's decision of no disability)).  Continuing, the ALJ noted that Plaintiff's own

statements (i.e., those regarding his abilities and daily activities) are inconsistent with the restrictive

limitations assessed by Dr. Gotthelf (Tr. 25).  Additionally, the ALJ noted, Dr. Gotthelf's restrictions

are inconsistent with those assessed by Dr. Chen and, overall, inconsistent with the abilities Plaintiff

displayed during Dr. Chen's consultative examination (*id.*).[15]   All of these reasons are fully

supported by the record and were properly considered by the ALJ.

The ALJ cited one final reason for discounting Dr. Gotthelf's opinions, namely, that they

"were not made during treatment but in a deposition for some other purpose" (Tr. 25).  The ALJ

erred in relying on this final reason as a basis to discount Dr. Gotthelf's opinions.  The purpose of

the deposition matters not; Dr. Gotthelf was under oath and provided relevant testimony regarding

his treatment of Plaintiff.  Thus, the ALJ should not have rejected his testimony on this basis.  If this

---

[15] It is significant that the ALJ's RFC determination is entirely consistent with the opinions of Dr. Chen, a board
certified orthopedic surgeon, because it shows that the ALJ properly "g[a]ve more weight to the opinion of a specialist
about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20
C.F.R. § 404.1527(d)(5).

was the only reason cited by the ALJ for discounting Dr. Gotthelf's opinions, the undersigned would have no hesitation in concluding that Plaintiff was entitled to relief here.  However, this reason was but one of many cited by the ALJ, and the other reasons he articulated—standing alone—are more than sufficient to uphold his decision to discredit the disabling opinions of Dr. Gotthelf. Accordingly, Plaintiff is not entitled to relief on this claim.

D.      Development of the Record

As his final claim for relief, Plaintiff contends the ALJ—having concluded that Dr. Gotthelf's opinions conflict with other evidence in the record—had an obligation to "explore that perceived conflict" (Doc. 18 at 19).  Plaintiff is mistaken, as this is not the standard for recontacting a treating physician or otherwise further developing the record.

It is well established in this Circuit that the ALJ has an affirmative duty to develop a full and fair record.  Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); Lucas v. Sullivan, 918 F.2d 1567, 1573 (11th Cir. 1990); Smith v. Bowen, 792 F.2d 1547, 1551 (11th Cir. 1986); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  This duty requires that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," Cowart, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." Crawford, 235 F.3d at 1304.  That does not mean, however, that the ALJ must search to the last document to find every possible piece of relevant evidence.  Rather, he must have sufficient evidence to decide the case.  The seminal cases in this circuit on the ALJ's duty to develop the record are Ford v. Secretary of Health and Human Services, 659 F.2d 66 (5th Cir. Unit B Oct. 15, 1981) and Reeves v. Heckler, 734 F.2d 519 (11th Cir. 1984).  Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision.  Where the ALJ has sufficient information to decide the case, however, he may do so.  Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to make a decision, no showing of prejudice is made).

Here, the ALJ had sufficient evidence to decide the case.  In addition to Dr. Gotthelf's treatment records, he had a sworn statement provided by Dr. Gotthelf, as well as evidence from two

consultative examiners and two non-examining agency experts.  He also had records documenting Plaintiff's back injury, back surgery, and related treatment, both before and after the date Plaintiff alleges disability.  Thus, the record was complete and adequate to make a decision, and the ALJ had no need or duty to recontact Dr. Gotthelf merely because he decided to reject his opinions.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 12<u>th</u> day of January 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**